IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY WROLSTAD,

                              Plaintiff,

    v.                                                         OPINION & ORDER

CUNA MUTUAL INSURANCE SOCIETY,                    15-cv-798-jdp

                              Defendant.

---

    Plaintiff Gary Wrolstad worked for defendant CUNA Mutual Insurance Society for more than 25 years. Then, in 2009, his department's priorities shifted, and senior management began demanding more from Wrolstad. Whether these evolving standards were adequately communicated to Wrolstad is an open question, but in fall 2009, the company decided to eliminate Wrolstad's position and assign his duties to a more senior employee. Wrolstad applied for several other positions with the company around that time, but the company refused to hire him in any of these capacities. Wrolstad signed a Waiver and Release of All Claims in exchange for severance pay and other consideration, and he left the company on December 30, 2009.

    Several months later, Wrolstad filed an age discrimination complaint against CUNA Mutual with the Madison Equal Opportunities Commission. As a result, CUNA Mutual turned around and sued him in state court for violating the terms of the Waiver and Release of All Claims. So Wrolstad filed this suit, bringing discrimination and retaliation claims against CUNA Mutual under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*

Now CUNA Mutual has moved for summary judgment. Dkt. 10. In response, Wrolstad has moved for leave to amend his complaint to drop a number of allegations and claims. Dkt. 42. Wrolstad concedes that he cannot adduce sufficient evidence to sustain discrimination claims as to four of the five positions he applied for and did not secure.[1] CUNA Mutual agrees to the proposed amendments. The proposed amendments will streamline summary judgment, so the court will grant Wrolstad's motion. Wrolstad's proposed amended complaint, Dkt. 43, is the operative complaint, and the court will redirect CUNA Mutual's motion for summary judgment toward that pleading.

Because Wrolstad has not adduced evidence sufficient to sustain his remaining discrimination claims, and because Wrolstad's retaliation claim is time barred, the court will grant CUNA Mutual's motion for summary judgment and close this case.

UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

A. Wrolstad's employment and termination

CUNA Mutual provides insurance products and financial services to credit unions and their members throughout the United States. Wrolstad began working for CUNA Mutual in 1984. Over the course of his employment there, Wrolstad held a variety of positions. Most recently, beginning in August 2006, Wrolstad worked as a financial reporting manager. Wrolstad worked as a financial reporting manager until December 30, 2009, when CUNA Mutual eliminated that position and terminated Wrolstad.

---

[1] Specifically, Wrolstad has withdrawn claims regarding the sales financial reporting manager position, the senior operations analyst position (later repurposed into an operations analytics manager position), and the senior manager corporate financial reporting position.

2

In July 2009, Michael Bress became CUNA Mutual's Vice President, Corporate Financial Planning & Analysis, and, in that capacity, oversaw Wrolstad (among others). Bress reported to Jerry Pavelich, CUNA Mutual's CFO at that time. In response to "a good deal of dissatisfaction with [the Corporate Financial Planning & Analysis] area of CUNA Mutual," Bress began exploring how to better organize the department and improve its financial reports. Dkt. 37, ¶ 18. In particular, CUNA Mutual's senior leadership wanted more analysis in the financial reports: they wanted the reports to *explain* the data and "tell a story." *Id.* ¶ 26. Wrolstad prepared those reports, and these new goals marked the beginning of the end for Wrolstad.

Tim Nygard, Wrolstad's direct supervisor at that time, addressed these new, increased expectations during Wrolstad's 2009 mid-year review. Wrolstad's mid-year evaluation—prepared in September 2009—provided:

> Areas for development that have been observed in the short managerial window needed for the evolving expectations of the Corporate FP&A group:
>
> - Change agency: with the group change, the focus has been on replication of the existing model. Success of the group will require crafting a new vision for reporting.
>
> - Strategic view: reporting historically has been expected to be a compliance exercise which has been very focused on rudimentary variance analysis. Reporting commentary needs to move focus to impact of results upon expected performance (forecast) and alignment with strategic vision.
>
> - Root cause analysis: variance analysis needs to move to a root cause from the strict plan vs. actual line item variance.
>
> These will challenge [Wrolstad] as the Corporate FP&A group evolves to this new set of expectations. He will need to leverage his strong historical knowledge, network and work ethic to continue to be successful this year.

3

> In the short term, I look to [Wrolstad] to draft an individual development plan (IDP) and establish goals for the rest of the year that take the above into consideration.

*Id.* ¶ 30. For his part, Wrolstad commented, "I feel like my job is to prepare and review our monthly financial results in formats that are understandable to most people in the company. I interact with and work well with a diverse group of personalities." *Id.* ¶ 31.

Around that time, Bress told Wrolstad, "Jerry doesn't like the reports." Dkt. 27, ¶ 18. Wrolstad states that he did not understand what Bress and Pavelich expected, that Bress did not explain the comment, and that the performance review did not provide any concrete guidance for him. Wrolstad believes that the mid-year evaluation was not fair to him: he "was criticized for needing more strategic analysis in [his] reports when [he] was never told that by Nygard, Bress or Pavelich." *Id.* ¶ 14. Bress—apparently rightly so—did not believe that Wrolstad understood what needed to be done, and he did not see any improvement in Wrolstad's work over the next several months, in terms of incorporating more "analysis" into his reports.

In October 2009, Nygard left and Bress began directly supervising Wrolstad. Around that time, Bress prepared a proposed reorganization plan for the Corporate Financial Planning & Analysis department, per Pavelich's request. Bress proposed that the director of financial reporting or a new, more senior financial reporting position take over financial reporting—i.e., Wrolstad's work. Bress developed a position description for a "senior manager, corporate financial reporting position." Dkt. 37, ¶ 49. The new position was different than Wrolstad's. Wrolstad's position produced financial reports to present "business execution results to senior leadership" and "measure the various activities in which the business division is engaged." *Id.* ¶ 52. The new position focused on "operational analysis,"

identifying "root cause variance drivers," and "interpret[ing] the impact on current and expected performance of the organization." *Id.* ¶ 53. The new position also required more experience and a number of other more advanced qualifications.

On November 1, 2009, Bress informed human resources that he would be eliminating Wrolstad's position, but he hoped to place Wrolstad elsewhere in the company. Human resources identified an opening for a position similar to Wrolstad's, and Bress passed the information along to Wrolstad. Bress and human resources met with Wrolstad on November 20, 2009, to inform him that the company would be eliminating his position, effective January 1, 2010. At that meeting, Bress told Wrolstad that he had decided to eliminate the position not because of Wrolstad's performance but because of the company's evolving needs. Later, after the meeting, Bress, Wrolstad, and human resources agreed to move his last day up to December 30, 2009, to better take advantage of retiree medical benefits.

On December 4, 2009, Wrolstad received a letter that outlined the nature of his separation from the company, including his right to seek other employment within the company, and a Waiver and Release of All Claims. By signing the Waiver, Wrolstad received 50 weeks of severance pay.

Wrolstad's last day in the office was December 18. Between December 18 and 30, Wrolstad had trouble accessing CUNA Mutual's internal job board. Human resources acknowledged the problem on December 23 and sent Wrolstad a list of job postings.

Wrolstad was 52 years old when CUNA Mutual eliminated his position.

## B. Wrolstad's application for a new position

Wrolstad applied for a job with CUNA Mutual as a pension participant support specialist (PPSS). Put simply, it was a customer service job. The job required knowledge of

401Ks and similar investment and retirement plans, the ability to identify sales opportunities and obtain referrals, and strong customer communication skills. About 100 people applied for the PPSS position, including Wrolstad and three other internal applicants. An outside recruiter's interview notes—CUNA Mutual was using the recruiter to screen applicants at that time—indicate that Wrolstad was "very overqualified" for the position but that he did not want to leave the company. Jeffrey Zimmer, the hiring manager at the time, felt that although Wrolstad had a lot of experience, it was not particularly relevant to the PPSS position. During the interview process, Wrolstad stated that he would be willing to work for $55,000 (a pay cut compared to his recently eliminated job); Zimmer reports that he would not have considered hiring someone for the PPSS position for that kind of money (the pay range for a PPSS was $32,390 to $52,665, and no one in that position at that time was at or close to the maximum end of the range). Wrolstad disputes this characterization of his statement and claims that he would have accepted the position for $42,527 or less; no one ever countered his initial $55,000.

On February 3, 2010, Zimmer offered the position to Josh Logemann, an external applicant, at a starting salary of $35,000. Zimmer believed that Logemann was the most qualified candidate, "because of his substantial experience with various financial institutions" and because of his sales experience. Dkt. 19, ¶ 20. Logemann was 23 years old when Zimmer hired him. Zimmer does not recall interviewing Wrolstad for the position, but having considered his resume, he has stated that he would not have considered Wrolstad to be as qualified for the position as Logemann: his resume does not indicate that he has any experience with 401Ks or similar retirement accounts, customer service experience, or sales experience.

**C. Wrolstad's Waiver and Release of All Claims and the aftermath**

As mentioned, CUNA Mutual offered Wrolstad a Waiver and Release of All Claims as he prepared for termination. Wrolstad signed the Waiver on December 30, 2009. But for signing the Waiver, Wrolstad would not have been entitled to any severance benefits. Wrolstad received all compensation, benefits, and other consideration promised under the Waiver. The Waiver provides, in relevant part, that Wrolstad has released CUNA Mutual "from any and all claims or causes of action . . . that [he] may have against CUNA Mutual." Dkt. 37, ¶ 197. But the Waiver did not prohibit Wrolstad from filing a complaint with or assisting the U.S. Equal Employment Opportunity Commission.[2]

On March 18, 2010, Wrolstad filed a complaint with the Madison Equal Opportunities Commission, alleging that CUNA Mutual discriminated against him on account of his age when they eliminated his position and did not hire him for any other position. CUNA Mutual timely responded to the complaint and argued that the Waiver barred the claims and that the claims were otherwise meritless. On December 2, 2010, an MEOC investigator determined that probable cause did not exist to believe that Wrolstad had been discriminated against on account of age and dismissed the complaint. This determination did not address the Waiver. Wrolstad appealed, and on December 22, 2010, CUNA Mutual warned Wrolstad in no uncertain terms that if he pursued the appeal, it would file a breach of contract action against him for breaching the terms of the Waiver. Wrolstad pursued the appeal, and CUNA Mutual filed suit on January 28, 2011.

---

[2] The Waiver provides that it "shall not be interpreted to preclude [Wrolstad] from filing a complaint, or charge with or assisting in any investigation by the EEOC, to the extent such right is not subject to waiver." Dkt. 13-1, at 3.

But that did not deter Wrolstad. He filed a second complaint with the MEOC in November 2011, complaining that CUNA Mutual retaliated against him when it filed the breach of contract action.

On March 15, 2012, the Circuit Court for Dane County, Wisconsin, dismissed CUNA Mutual's complaint, finding that the MEOC should determine the enforceability of the Waiver. On April 15, 2015, an MEOC hearing examiner determined that he could not decide whether the Waiver was enforceable on the record before him. He allowed Wrolstad 15 days to decide whether to transfer his claims to the EEOC for further processing, and Wrolstad took the MEOC up on its offer.

On September 17, 2015, the EEOC issued a Dismissal and Notice of Rights Letter, finding that reasonable cause did not exist to believe that Wrolstad had been discriminated against on account of age. And on February 29, 2016, the EEOC issued a Notice of Right to Sue as to the retaliation claim.

The court has subject matter jurisdiction over Wrolstad's claims pursuant to 28 U.S.C. § 1331, because they arise under federal law.

## ANALYSIS

Wrolstad brings discrimination and retaliation claims under the ADEA: Wrolstad claims that CUNA Mutual discriminated against him when it eliminated his position and when it refused to hire him as a PPSS; and CUNA Mutual retaliated against Wrolstad when they sued him for breach of contract. Summary judgment on those claims is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over

facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing CUNA Mutual's motion for summary judgment, the court construes all facts and draws all reasonable inferences in Wrolstad's favor. *Id.* at 255. "To survive summary judgment, the nonmovant must produce sufficient admissible evidence, taken in the light most favorable to it, to return a jury verdict in its favor." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603 (7th Cir. 2012).

## A. Discrimination

The ADEA provides that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). In other words, Wrolstad must prove that his age was the "but-for" cause of some adverse employment action—i.e., the decision to eliminate his position and the decision to refuse to hire him for the PPSS position. *See id.* at 177-78.

To defeat CUNA Mutual's motion for summary judgment, Wrolstad may adduce either direct or indirect evidence of age-based discrimination. *Roberts v. Columbia Coll. Chi.*, 821 F.3d 855, 865 (7th Cir. 2016). Wrolstad may show that an admission or other evidence "points directly to a discriminatory reason for the employer's action." *Fleishman*, 698 F.3d at 603 (quoting *Davis v. Con-Way Transp. Cent. Express, Inc.*, 368 F.3d 776, 783 (7th Cir. 2004)). Or he may "show that (1) 'he was meeting his employer's legitimate expectations,' (2) 'he suffered an adverse employment action,' and (3) 'similarly situated, substantially

younger employees were treated more favorably.'" *Id.* at 609 (quoting *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771-72 (7th Cir. 2002)). Under *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the test "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." The court considers the evidence "as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* The critical question is whether Wrolstad has adduced evidence that would allow a reasonable jury to find that Wrolstad's age was the but-for cause of an adverse employment action.

Wrolstad has not adduced any evidence that his age was a factor in either adverse employment action, much less that it was the but-for cause of those actions.

We'll start with the decision to eliminate his position. Bress made the decision; Wrolstad has not adduced any evidence that Bress made the decision because of Wrolstad's age or that Bress harbored any age-based discriminatory animus. In fact, Bress looked for another position for Wrolstad. In November 2009, Bress emailed a colleague about an open position:

> I have a person on my team (Gary Wrolstad, 508) who currently does financial metrics reporting for me. With some changes we are making to our broader Reporting functions in Finance, his position is being eliminated (he does not know yet), but I still think that he can add a lot of value. So I am looking around to see if there are other positions he could look into.
>
> Let me know. I am going to move forward with the position elimination pretty quickly, but would appreciate having a place to direct him if you have it open and might be interested.

10

Dkt. 37, ¶ 121. And Wrolstad has not adduced any indirect evidence of age-based discrimination, either: even if he had been meeting CUNA Mutual's expectations (the evidence says otherwise), he has not shown that any similarly situated, substantially younger employees were treated more favorably.

That leaves the decision to refuse to hire him for the open PPSS position. Zimmer made that decision, and Wrolstad has not adduced any direct evidence that his age played a role in the decision. The "evidence" Wrolstad has managed to adduce cannot carry the day for him. Out of the gate, Wrolstad attempts to lead the court away from the relevant inquiry by discussing CUNA Mutual's internal hiring policies and potential violations thereof. But Wrolstad has not adduced any evidence that CUNA Mutual violated its internal policies, and even if he had, he does not explain how that evidence would be relevant to his discrimination claim.[3] Next, Wrolstad spends some time attempting to prove that he was qualified for the position. There are two problems with his approach. First, Wrolstad's evidence that he was qualified for the position is the recruiter's interview note that he "seem[ed] very overqualified." Dkt. 19-12, at 4. But "over-qualification constitutes a legitimate, non-discriminatory reason for rejecting [an applicant] for [an] open position[]." *Sembos v. Philips Components*, 376 F.3d 696, 701 n.4 (7th Cir. 2004). Second, being qualified for a position and not securing it, alone, is insufficient to return a favorable jury verdict: Wrolstad must also prove that similarly situated yet substantially younger individuals were treated more favorably if he hopes to prove age discrimination. Logemann and Wrolstad were not similarly situated, and Wrolstad offers no argument to the contrary: CUNA Mutual has adduced

---

[3] He cannot prove that CUNA Mutual posted the opening internally and externally at the same time, for example. And regardless, this potential policy violation does not suggest age-based discrimination.

evidence that Logemann had more on-point customer service experience, and, critically, Logemann did not demand the salary that Wrolstad wanted.

Wrolstad does not offer evidence of age-based discrimination: he offers rhetorical questions to *suggest* age-based discrimination: "was an objective hiring policy followed, was a contracted posting policy followed, were appropriate applicants (internal) objectively screened (or screened at all), and was Plaintiff by-passed for the position without an interview due to an initial, but not final, salary request." Dkt. 24, at 11. But he cannot prove any of the foregoing. He points to Logemann and *suggests* that age "may be" the but-for reason Wrolstad did not secure the position. But rhetorical questions and suggestions are not enough to survive summary judgment. Wrolstad has not adduced evidence that would allow a reasonable jury to find that his age was a but-for cause of CUNA Mutual's decision to eliminate his position or its decision to refuse to hire him for the PPSS position. The court will grant summary judgment in favor of CUNA Mutual on Wrolstad's discrimination claim.

**B. Retaliation**

The ADEA also provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). This section "explicitly prohibits discrimination against employees who engage in protected activity." *EEOC v. Bd. of Governors of State Colls. & Univs.*, 957 F.2d 424, 427 (7th Cir. 1992). Even though Wrolstad's underlying discrimination claim has failed, he may still pursue a claim that CUNA Mutual

retaliated against him for complaining about age discrimination. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 612 (7th Cir. 2001).

But the court need not reach the merits of Wrolstad's retaliation claim because it is untimely. The parties agree that Wrolstad had 300 days to file a charge with the EEOC following CUNA Mutual's allegedly unlawful (i.e., retaliatory) act. *See* 29 U.S.C. § 626(d)(1)(B); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002) ("In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits."). The operative question here is when did the allegedly unlawful practice occur: when CUNA Mutual warned Wrolstad that it would sue if he did not abandon his MEOC appeal (more than 300 days before Wrolstad filed a charge with the EEOC), or when it actually sued (less than 300 days before Wrolstad filed a charge with the EEOC)?

An unlawful—discriminatory or retaliatory—action occurs when the "decision [is] made and communicated" to the employee, even if the consequences of that decision do not occur until later. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980). Here, an allegedly retaliatory action occurred when CUNA Mutual decided that it would file a breach of contract action against Wrolstad if he pursued his MEOC appeal and told him as much. *See* Dkt. 13-6, at 1 ("If Mr. Wrolstad pursues this appeal, CUNA Mutual *will* file a breach of contract action against him in state court." (emphasis added)). But this decision is not actionable: it is time barred. *See Morgan*, 536 U.S. at 113 ("[D]iscrete discriminatory acts are

not actionable if time barred, even when they are related to acts alleged in timely filed charges.").

The act of actually initiating the suit would be actionable only if it were a discrete, independently discriminatory decision. *See id.* (examining identical statutory language from Title VII and holding that "[t]he existence of past acts and the employee's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts *so long as the acts are independently discriminatory* and charges addressing those acts are themselves timely filed." (emphasis added)). So is the actual initiation of the breach of contract action a discrete, independently discriminatory decision?

It is a stretch to say that CUNA Mutual committed two discrete, independently retaliatory acts: one when it promised to bring a state court suit, and a second when it actually made good on that promise. Indeed, "a plaintiff's time begins to run 'when the employer communicates an adverse employment decision to the employee, not when the full consequences of that action are felt.'" *Young v. Easter Enters., Inc.*, 915 F. Supp. 58, 66 (S.D. Ind. 1995) (quoting *Gustovich v. AT & T Commc'ns, Inc.*, 972 F.2d 845, 847 (7th Cir. 1992)). That is what happened here: CUNA Mutual communicated its adverse, purportedly retaliatory decision to Wrolstad, and the full consequences of that decision hit when it actually initiated the state court suit.[4]

In *Ikossi-Anastasiou v. Board of Supervisors of Louisiana State University*, 579 F.3d 546, 550 (5th Cir. 2009), a letter communicated the employer's allegedly discriminatory decision to the employee, and subsequent confirmation of that decision and the adverse consequences

---

[4] Wrolstad contends that the letter communicating this decision is an offer of compromise inadmissible under Federal Rule of Evidence 408. Even if it were an offer of compromise, it is not inadmissible to show the beginning of the limitations period.

of that decision did not constitute new discriminatory acts. The employee's claim accrued when she received the letter: she was on notice that an adverse, purportedly discriminatory employment action (termination) would occur if she did not take certain steps (return to work). The same may be said here: Wrolstad was on notice that a purportedly retaliatory action would occur if he did not take certain steps (abandon his MEOC appeal). The retaliation claim accrued more than 300 days before Wrolstad filed a claim with the EEOC. As a result, the court will grant summary judgment in favor of CUNA Mutual on Wrolstad's retaliation claim.

ORDER

IT IS ORDERED that:

1. Plaintiff Gary Wrolstad's motion to amend complaint, Dkt. 42, is GRANTED.

2. Defendant CUNA Mutual Insurance Society's motion for summary judgment, Dkt. 10, is GRANTED as to all claims preserved in plaintiff's amended complaint.

3. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered April 4, 2017.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge